1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

ERIN M. STINES,

9                        Plaintiff,

10            v.

11  FIDELITY NATIONAL FINANCIAL, INC.,
    a Florida Corporation; FIDELITY
12  NATIONAL TITLE GROUP, INC., a Florida
    corporation; FIDELITY NATIONAL LAW
13  GROUP, a business entity whose form is
    unknown; and JAY LEVITCH, senior vice
14  president and director of in-house litigation;

15                        Defendants.

NO.

COMPLAINT AND JURY DEMAND

16        Erin M. Stines alleges as follows:

17                    I.        **INTRODUCTION**

18        Plaintiff Erin Stines was employed by defendants for a period of five years.  Hired

19  with the assurance that she was an equal member of the attorney team tasked with handling

20  title insurance claims against the employer, Stines was consistently discriminated against

21  because she was a woman.  The male attorneys were consistently paid more, and given more

22  favorable conditions of employment than she was, even though she had prior experience in

23  title insurance litigation and they did not.  When a second female attorney was hired, she too

24  was discriminated against.  During her employment Stines observed what she perceived to be

25  race discrimination and sex discrimination against others, as well as sex discrimination

26  against herself.  Over a course of years, Stines raised the issue of unequal pay with her

COMPLAINT AND JURY DEMAND – 1

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

supervisors, and was repeatedly told that efforts were being made to close the pay gap. But the pay gap remained. When Stines spoke out against the unlawful discriminatory practices that she observed, she was fired and replaced with a male attorney who did not have the experience that she had. Stines was fired roughly one month after she complained to the employer's in-house Human Resources Administrator that she was making less than her male counterparts.

## II.   JURISDICTION

2.1   This Court has jurisdiction of these claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

2.2   On October 15, 2016, Plaintiff filed a timely complaint of discrimination with the Equal Employment Opportunity Commission, (Charge Number 551-2015-01928), and the EEOC issued her a right to sue letter on March 29, 2016.

2.3   Federal question jurisdiction is conferred on this Court by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(1) and by the Equal Pay Act per 29 U.S.C. §216(b).

2.4   This Court has supplemental jurisdiction over her State Law claims brought pursuant to the Washington Law Against Discrimination, RCW 49.60.010 *et seq*.

## III.   PARTIES

3.1   Plaintiff Erin Stines is a resident of the State of Washington who, at all times material herein, resided in King County, Washington.

3.2   Plaintiff is informed and believes that Fidelity National Financial, Inc. ("FNF") is a Florida corporation, whose business involves title insurance.

3.3   Plaintiff is informed and believes that Fidelity National Title Group, Inc. ("FNTG") is a Florida corporation, whose business involves title insurance. FNTG is a subsidiary of FNF.

COMPLAINT AND JURY DEMAND – 2

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

3.4     Plaintiff is informed and believes that Fidelity National Law Group ("FNLG") is a division of FNTG, and it handles claims and suits against FNF and FNTG and its insureds.

3.5     Jay Levitch is, and at all times material herein was, the director of in-house litigation for the Fidelity National Law Group.   On information and belief Levitch is a resident of the State of Florida.

3.6     FNF, FNTG, and FNLG, are all employers within the meaning of 42 U.S.C. §2000e-(f), 29 U.S.C. §203(e)(2)(A)(ii), and RCW 49.60.040.

3.7     All facts, events, and transactions giving rise to this lawsuit occurred within the geographic boundaries of the Western District of Washington.

3.8     Venue is proper in this Court per 28 U.S.C. §1391(b).


IV.     **FACTS**

4.1     Plaintiff Erin Stines commenced her employment with Fidelity National Law Group in August of 2010.

4.2     Stines was fired on August 24, 2015.

4.3     Stines final paycheck, Check No. 7362690, covered the pay period from August 17, 2015 through August 30, 2015.

4.4     At all relevant times of employment, Erin Stines met or exceeded her employer's legitimate performance expectations.

4.5     At all relevant times of employment, Erin Stines' record of closing cases, and her work for Fidelity National Law Group, was exceptional.

4.6     Stines was invited to apply for an attorney position with FNLG by Mark Phelps, the Managing Attorney for the Seattle office of FNLG.

4.7     Phelps was hired by Fidelity to open and run an in-house litigation office in Seattle.   Phelps' initial attorney hire was a male attorney, Henry Hamilton.

COMPLAINT AND JURY DEMAND – 3

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

4.8     Phelps' second attorney hire made in early 2010 was another male attorney, Matt Cleverley.

4.9     Phelps' third attorney hire was plaintiff Erin Stines.

4.10    Hamilton, Cleverley and Stines were all hired within a period of approximately six months.

4.11    Phelps initially contacted Stines in late 2009 and expressed an interest in hiring her to work for FNLG.  When Phelps contacted Stines again in the spring of 2010 Stines was pregnant and was expecting her baby in June of 2010.

4.12    In May of 2010 Stines and Phelps agreed to terms of employment.  It was agreed that Stines would start work in August after her baby was born.

4.13    Stines' initial salary was $117,500 per year.

4.14    When she was hired, Stines had significantly more experience defending and prosecuting title claims than did her male counterparts, Hamilton and Cleverley.

4.15    Although Phelps told Stines that she was being hired with the status of an Associate Counsel, when Stines reported for her first day of work she learned that her job title was Assistant Vice President and that there was no such thing as "Associate Counsel."

4.16    Stines subsequently learned that Hamilton and Cleverley both had the job title of Vice President.

4.17    Though Stines inquired, no explanation was given to Stines as to why her job title was not as high as the job title given to Hamilton and Cleverley.

4.18    A few months after she started working for FNLG, Stines learned that a male attorney had applied for, and had been offered the position that Stines was ultimately hired for, but the male attorney had turned down the job offer.  This male attorney had fewer years of relevant experience than Stines did.  Nevertheless, this male attorney had been offered a substantially higher salary than the salary offered to Stines.

COMPLAINT AND JURY DEMAND – 4

STI020-0001 3958355.docx

4.19    In the fall of 2010, Phelps hired a fourth attorney to work in the Seattle office. This attorney was Tom Larkin.

4.20    Larkin was never interviewed by the team of attorneys in the Seattle office. The group was simply told that Phelps had hired Larkin.

4.21    Shortly after he accepted the job and started work for FNLG, Larkin told Stines that the reason he got the job was that his sister was married to Randy Quirk's stepson. Randy Quirk is the President of FNF.

4.22    Stines was assigned to do the same work as the male attorneys.  Initially she handled only cases filed in courts located in Washington State.  But when the Seattle office of FNLG expanded and started handling cases filed in Oregon, Phelps asked Stines to start handling Oregon cases as well as Washington cases.  Attorneys Hamilton and Larkin were not asked to handle cases in Oregon.  Although she had been hired with the understanding that she would not travel and would only handle cases in Washington State, Stines began traveling and handling cases in Oregon.

4.23    In 2011, FNLG demoted Phelps to the position of a regular trial attorney and made attorney Peter Wolff the new Managing Attorney of the Seattle office.

4.24    Wolff reported to FNLG's national director Joe Tucker who worked in the New York office.

4.25    Shortly after his appointment, Wolff asked Stines and Larkin to become licensed to practice law in Idaho.  After they were admitted to the Idaho bar, Wolff started assigning Idaho cases to Stines, but he did not assign any Idaho cases to Larkin.  Nor were any Idaho cases assigned to Hamilton.  Cleverley, who was admitted to the bar in Oregon and Idaho, did handle some cases in those states.  It was not until 2013 that Hamilton became licensed in Oregon, and thereafter he handled a small number of Oregon cases.

4.26    Stines questioned why she was assigned cases that required out-of-state travel when she had two young children at home and when she was hired with the understanding

COMPLAINT AND JURY DEMAND – 5

STI020-0001 3958355.docx

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

that she was not going to have to handle out-of-state cases.   She told Wolff that since she was doing more work than initially contemplated she should be making more money.

4.27    Wolff told Stines that she was making less money than Hamilton and Cleverley simply because they had negotiated better than she had.

4.28    In 2011 after being demoted, Phelps stopped coming to work altogether. Stines does not know whether he quit or was fired.

4.29    In May of 2011 Wolff announced that Tom Larkin would be taking over from him as Managing Attorney for the Seattle office.

4.30    Even before Larkin became the Managing Attorney, Stines complained to him that her salary was lower than the salaries that Hamilton and Cleverley were earning, even though she had more litigation experience and even though she was handling more cases than they were.   Larkin told Stines that because of his family connections to the company he knew the range of salaries being paid to attorneys and thus he knew how to negotiate.

4.31    After Larkin became the Managing Attorney he told Stines that he now had access to salary information and he confirmed that she was making less money than Hamilton and Cleverley.   Larkin told Stines that he wanted to make things right and told her that he wanted to fix things so that Stines' salary would be on a par with what they were making.

4.32    Stines learned that Cleverley was also conducting his own private practice of law on the side.   She mentioned this to Larkin and Larkin said he was not going to take any action to stop Cleverley from doing this.

4.33    In July of 2011 Larkin hired Dan Womac to be an attorney in the Seattle office.

4.34    Larkin described Womac as his best friend from law school.

4.35    Womac had no real estate or title insurance litigation experience.

4.36    Larkin also hired a 22 year old white woman with no prior work experience as a legal assistant.   Stines had suggested that Larkin hire a different candidate with more

COMPLAINT AND JURY DEMAND – 6

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

experience to support the practice, but Larkin told her he wanted to hire someone younger. This legal secretary was assigned to work for attorney Womac.

4.37    Stines learned that the younger white female legal assistant was being paid more than a black female legal assistant with over fifteen years of legal experience.  Stines complained about this to Larkin.

4.38    Womac and the younger white female legal assistant appeared to become romantically involved.  Womac was married and what appeared to be his affair with the legal assistant caused substantial disruption in the workplace.

4.39    Stines complained to Larkin about the disruption in the workplace caused by the apparent affair between Womac and the legal assistant.  Stines suggested that Larkin inform Human Resources but he told Stines he was not going to do that because he did not want to do that to his friend.

4.40    Eventually Larkin told Stines that the problem was "solved" because Womac was leaving Seattle and going to work in FNLG's New York City office because his wife had an attractive job opportunity in New York City.  After Womac and his wife moved to New York City, Larkin promoted the legal assistant.

4.41    In March of 2013 Stines had her first and her only performance review.  She was evaluated by her supervisor Tom Larkin.  Larkin gave her a positive review, praising her as an excellent attorney, a great team player, and one of the most productive attorneys in the office even though she was managing a three state practice.  In all respects Larkin found that Stines was meeting or exceeding expectations.

4.42    Larkin told Stines that based on her positive evaluation, he was going to do everything he could to increase her salary and to bring her up to the same level as the male attorneys.

COMPLAINT AND JURY DEMAND – 7

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

4.43    Larkin eventually told Stines that although he had secured a raise for her, that this raise did not bring her up to the point of making the same salary as the male attorneys Hamilton and Cleverley.   He said it was the best he could do.

4.44    In the spring of 2013 Joe Tucker was demoted and Jay Levitch became the new senior vice president and national director of the in-house litigation group.

4.45    In the summer of 2013 Larkin hired a female attorney, Janis White to replace attorney Womac who had moved to New York City.  White had approximately 30 years of legal experience which was significantly more than any other attorney in the office.

4.46    In the fall of 2013 Stines received another raise.  Again, Larkin told Stines that it was the best he could do.  Stines asked Larkin if she was now making at least as much as the male attorneys (Hamilton and Cleverley) were making and Larkin said he could not talk about what other attorneys were making.  Larkin suggested that Stines talk directly to Jay Levitch.

4.47     On October 29, 2013 Stines spoke with Levitch.  Levitch acknowledged that the male attorneys were being paid more than Stines even though they were all doing substantially the same work.

4.48    Levitch told her that she was a good team player.

4.49    Levitch told Stines that the company considered her a very valuable attorney and that everyone liked her.

4.50    Levitch told Stines that he would look into increasing her salary but said that he could not immediately increase Stines' salary up to the point of equality with the male attorneys.  He said he could not bring her salary up to parity all at once, but led her to believe that he could get her there eventually.

4.51    Levitch also told Stines that he could increase her total compensation by giving her a bonus.

COMPLAINT AND JURY DEMAND – 8

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

4.52    After her October 29th conversation with Levitch, Stines waited to see what he would actually do.  Because she did not hear anything more from him, on November 19th she contacted Levitch again to follow up and ask him what he was going to do.

4.53    Stines told Levitch that company statistics showed that she was travelling more while opening and closing cases faster than her male counterparts Hamilton and Cleverley, and that she did not understand why they earned a higher salary than she did.

4.54.    Stines told Levitch that when she was hired by Mark Phelps, she was told that she was hired as an equal member of the team and that after Phelps left the company she discovered that this was untrue because she was not being equally compensated.

4.55    Stines told Levitch that while she understood that Levitch did not create the salary disparity between her and the men, she was relying upon Levitch to fix the problem.

4.56    Levitch replied that he would talk to her again on December 9, 2013.

4.57    Stines and Levitch spoke again on December 9th.  During this conversation Levitch again confirmed that Hamilton and Cleverley made more money than Stines did.  He also confirmed that Stines closed more cases than they did, and told her that that was why he wanted to get her more money.

4.58    Shortly after this conversation Larkin asked Stines if she would agree to a salary increase up to $140,000 a year.  Stines replied, "I guess," but said she didn't really know whether to agree to that since she didn't know what Hamilton and Cleverley were making.  Larkin then re-contacted her and said he had approval for a raise to $140,000.

4.59    Effective January 1, 2014 Stines' salary was increased to a salary of $140,000.

4.60    In the fall of 2014 Larkin told Stines that she had closed enough cases for the year and not to close any more during that calendar year. This direction was inconsistent with the direction given to all attorneys by corporate headquarters that the attorneys were never supposed to slow down or stop closing cases.

COMPLAINT AND JURY DEMAND – 9

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

4.61   In the spring of 2015 attorney Janis White asked Stines if she had heard anything about getting a raise or a bonus.  At this point White had been employed by the company for two years and had not received any increase.

4.62   Stines informed White that if bonuses were paid they were paid at the end of May and that Larkin had said that salary increases would be given in June or July.

4.63   While assisting White in the management of her Fidelity stock plan options, Stines learned that White had been hired at a salary of $140,000.  This surprised Stines since White had more litigation experience than any other attorney in the office.  Stines questioned why White would be making less than Hamilton and Cleverley.

4.64   Stines told White that White was making the same salary as Stines, and this upset White.

4.65   Also in the spring of 2015, the African-American legal assistant who had been paid less than the young white legal assistant left FNLG and took a job with a private law firm where she was paid considerably more than she had been earning at FNLG.

4.66   On May 29, 2015 Stines was informed she was receiving a bonus.  Stines was told that not everyone had received a bonus, and was specifically told that Janis White had not received a bonus.   Larkin told Stines she was receiving a bonus because her performance in 2014 had been outstanding.

4.67   Stines asked Larkin if her bonus was the same bonus that the male attorneys had received and Larkin said it was "roughly" the same size.

4.68   Around this time Stines also learned that attorney White's job title was simply trial counsel, and that White had asked Larkin what job titles the other attorneys had.  Larkin told her that Hamilton and Cleverley were listed as Vice Presidents and that Stines was listed as an Assistant Vice President.   White was angry that she had no officer position and complained to Larkin and to Human Resources.

COMPLAINT AND JURY DEMAND – 10

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

4.69    Larkin told White that she had been left off the list of company officers by mistake and that he would see to it that this mistake was corrected.

4.70    On July 28, 2015 Larkin told Stines that she would be receiving a raise of $2,500.  He told her that her salary increase of $2,500 was roughly the same as everyone else's salary raise.

4.71    Since equal salary raises meant that Stines was not closing the gap between her salary and the salaries of her less experienced male colleagues, Stines asked Larkin what he thought she should do.  Larkin replied that there was no more money to be distributed, but that Jay Levitch wanted anyone with issues to talk to him about it.

4.72    Since Stines had already spoken to Levitch nearly two years previously about closing the gap between herself and the male attorneys, she was frustrated to learn that the salary gap between her salary and the salaries of the male attorneys was not being narrowed. Stines asked Larkin if it was now appropriate for her to take her complaint to the Human Resources Department.  Larkin said yes that would be appropriate.

4.73    On July 28, 2015, Stines contacted Melissa Mack, the Human Resources Administrator at Fidelity National Title.  Mack was assigned as the Seattle FNLG's Human Resources contact.  Stines told Mack that while she appreciated receiving a $2,500 raise, her raise was not consistent with the conversations she had had with Levitch in 2013 when he informed Levitch that she was making less than Hamilton and Cleverley.  Stines told Mack that Levitch had increased her salary some but had told her that he could not bring her all the way up to parity with the men all at once.  Stines told Mack that a $2,500 raise did not close the gap between her and the male attorneys and that she suspected that the gap might even by widening.

4.74    Mack replied that she had spoken to Levitch about the matter and that he would speak to Stines about it if Stines gave him a call.

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

4.75   On August 3, 2015 Stines had a conversation with Levitch and renewed her complaint that the men were still making more money than she was.  She pointed out to Levitch that in 2014 she had closed nearly twice as many cases as Cleverley and Hamilton, yet she was paid a lower salary and – at best – an equivalent bonus.

4.76   Levitch again acknowledged that she was making less than her male counterparts.  He told her that he did not have an unlimited amount of money, that he had no more funds to distribute, and that he simply didn't have the money she was asking for.  He suggested that if she was unhappy with what she was making perhaps she should look for a job elsewhere.

4.77   Three weeks after her August 3rd conversation with Levitch, Stines was fired by Patrick Mortimer, Vice President/Employment Counsel for FNF, and by Tom Larkin.

4.78   Stines was informed that she was being fired for failure to be a team player and for making inappropriate comments to and about employees.  She was also told she was fired for violation of a company policy.  Stines asked what company policy she had violated and how, but she was told that they would not discuss that subject with her.

4.79   On September 1, 2015 Stines learned that attorney Womac was being transferred back to the Seattle office and that he was going to be taking over Stines' caseload.

## V.       CAUSES OF ACTION

Based on the factual allegations asserted above and incorporated herein, Plaintiff Stines asserts the following causes of action.

### Count I – Equal Pay Act (discrimination)

5.10   Defendants FNF and FNTG discriminated against Stines in violation of the Equal Pay Act per 29 U.S.C. §206(d)(1).

5.11   Stines was paid wages at a rate less than the rate at which defendants paid similarly situated male employees performing equal work, the performance of which required equal skill, effort, and responsibility, with such work being performed under similar working

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

conditions, and such differences in pay were not made pursuant to any (1) seniority system;
(ii) merit system; (iii) system which measures earnings by quantity or quality of production;
or (iv) any other factor other than sex; all in violation of 29 U.S.C. §206(d)(1).

5.12     The actions of defendants FNF and FNTG were intentional, willful, and done
in reckless disregard of Stines' rights as protected by the Equal Pay Act.

5.13     Plaintiff suffered damages as a result of defendants' unlawful conduct.

### Count II – Equal Pay Act (retaliation)

5.14     Defendants FNF and FNTG discharged Stines in violation of the Equal Pay
Act per 29 U.S.C. §218c.

5.15     Defendants FNF and FNTG discharged Stines because she objected to
activities, policies, and/or practices which she reasonably believed to be in violation of Title
29 of the United States Code.

5.16     Plaintiff suffered damages as a result of defendants' unlawful conduct.

### Count III – Title VII (discrimination)

5.17     Defendants FNF and FNTG discriminated against Stines because of her gender
in violation of 42 U.S.C. §2000e-2(a)(1).

5.18     While employed by defendants FNF and FNTG, Stines was subjected to less
favorable, disparate treatment in the terms, conditions and privileges of her employment on
the basis of her gender, including disparate pay in salary, disparate pay in bonuses, and
disparate treatment in requiring her to handle out-of-state cases which required extensive
travel; and disparate treatment in terms of her recognized job title.

5.19     Defendants' conduct was willful, deliberate, and in reckless disregard for her
rights under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §2000e et seq.

5.20     Plaintiff suffered damages as a result of the defendants' unlawful conduct.

COMPLAINT AND JURY DEMAND – 13

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

**Count IV – Title VII (retaliation)**

5.21    Defendants FNF and FNTG discriminated against Stines by discharging her in retaliation for her having opposed unlawful employment practices prohibited by 42 U.S.C. §2000e in violation of 42 U.S.C. §2000e-3(a).

5.22    Plaintiff suffered damages as a result of defendants' unlawful conduct.

**Count V (Title VII hostile work environment)**

5.23    Defendants FNF and FNTG discriminated against Stines by failing to eradicate a hostile work environment in violation of 42 U.S.C. §2000e-2(a).

5.24    Plaintiff suffered damages as a result of defendants' unlawful conduct.

**Count VI – Washington Law Against Discrimination
(Discrimination)**

5.25    Defendants FNF, FNTG, and Jay Levitch, discriminated against Stines because of her gender in violation of RCW 49.60.030 and RCW 49.60.180.

5.26    While employed by defendants FNF, FNTG, and Jay Levitch, Stines was discriminated against in terms of her compensation, and in other terms or conditions of her employment, including but not limited to disparate treatment in requiring her to handle out-of-state cases which required extensive travel; and disparate treatment in terms of her recognized job title.

5.27.    Plaintiff suffered damages as a result of defendants' unlawful conduct.

**Count VII – Washington Law Against Discrimination (Retaliation)**

5.28    Defendants FNF, FNTG, and Jay Levitch, discriminated against Stines by discharging her in retaliation for her having opposed unlawful employment practices prohibited by RCW 49.60 in violation of RCW 49.60.210.

COMPLAINT AND JURY DEMAND – 14

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

5.29    Plaintiff suffered damages as a result of defendants' unlawful conduct.

**Count VIII – Washington Law Against Discrimination
(hostile work environment)**

5.30    Defendants FNF and FNTG discriminated against plaintiff Erin Stines by failing to eradicate a hostile work environment in violation of RCW 49.60.180.

5.31    Plaintiff suffered damages as a result of defendants' unlawful conduct.

## VI.    RELIEF REQUESTED

6.1    Plaintiff respectfully requests that this Court find for her on her claims and award her the following relief:

6.1.1    Judgment for all lost wages, unpaid bonuses, and benefits, including back pay with interest, and front pay in lieu of reinstatement, the latter without the statutory cap, per 42 U.S.C. §2000e-5(f), (g) and 42 U.S.C. §1981a.

6.1.2    Judgment for damage to reputation, loss of standing, emotional distress, mental anguish, pain and suffering, humiliation, and loss of enjoyment of life, per 42 U.S.C. §2000e-5(e)(3)(B) and 42 U.S.C. §1981a, and RCW 49.60.030(2).

6.1.3    Judgment for all compensatory, liquidated, and punitive damages as allowed by law.

6.1.4    Judgment for pre- and post-judgment interest.

6.1.5    Judgment for all costs and reasonable attorney fees incurred in litigating this action under Title VII, 42 U.S.C. §2000e-5(k).

6.1.6    Judgment for all unpaid salary and bonuses, plus an additional equal amount as liquidated damages, per 29 U.S.C. §216(b).

COMPLAINT AND JURY DEMAND – 15

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

STI020-0001 3958355.docx

6.1.7   Judgment for a civil penalty of $1,100 for each violation of the Equal Pay Act, per 29 U.S.C. §216(e)(2).

6.1.8   Judgment for attorney fees and costs under the Equal Pay Act, per 29 U.S.C. §216(b).

6.1.9   Judgment for attorney fees and costs under the Washington Law Against Discrimination, per RCW 49.60.030(2).

6.1.10  Judgment for all other damages and/or relief deemed appropriate, or allowed as a matter of law, and found as just by this Court.

## VII.   JURY DEMAND

7.1   Plaintiff demands a jury of twelve in the above entitled matter.

DATED this 8th day of June, 2016.

s/ James E. Lobsenz
s/ Lucinda J. Luke
James E. Lobsenz WSBA #8787
Lucinda J. Luke WSBA #26783
Attorneys for Plaintiff
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
Phone:  (206) 622-8020
Facsimile:  (206) 467-8215
lobsenz@carneylaw.com
luke@carneylaw.com

COMPLAINT AND JURY DEMAND – 16

STI020-0001 3958355.docx